UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 16-11141AEC |
| | § | |
| MIRIAM HITTNER TONDERA | § | |
| | § | |
| DEBTOR | § | CHAPTER 13 |

### NOTICE OF HEARING ON MOTION FOR RELIEF FROM AUTOMATIC STAY AND WAIVER OF THIRTY DAY HEARING REQUIREMENT

GEORGE HITTNER FILED DOCUMENTS WITH THE COURT TO MODIFY THE AUTOMATIC STAY TO ALLOW HIM TO SEEK EQUITABLE RELIEF IN A TEXAS STATE COURT.

**YOUR RIGHTS MAY BE AFFECTED. You should read these documents carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one. If not served with this notice in accordance with the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, a copy of the motion may be obtained upon written request to counsel for the Movant or at the Clerk's office.**

If you do not want the Court to grant the motion for relief, or if you want the court to consider your views on the motion for contempt, then you or your attorney shall attend the hearing scheduled to be held on

**January 6, 2021 at 10:00 a.m. at CB King U.S. Courthouse, Second Floor, 201 West Broad Avenue, Albany, GA 31701.**

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting relief.**

This notice is sent by the undersigned pursuant to M.D.Ga. LBR 4001-1.

This 17th day of November, 2020.

/S/ Robert M. Matson
_____

Akin, Webster & Matson, P.C.          Robert M. Matson
P.O. Box 1773                          Attorney for Movant
Macon, GA  31202                       State Bar No. 477102
(478) 742-1889
rmatson@akin-webster.com

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 16-11141 AEC |
| | § | |
| MIRIAM HITTNER TONDERA | § | |
| | § | |
| DEBTOR | § | CHAPTER 13 |
| | § | |

## MOTION FOR RELIEF FROM AUTOMATIC STAY AND WAIVER OF THIRTY DAY HEARING REQUIREMENT

George Hittner ("Movant") in the above referenced case, files his *Motion for Relief from Automatic Stay and Waiver of Thirty Day Hearing Requirement* (the "Motion") pursuant to 11 U.S.C. § 362(d)(1) and shows the Court the following:

### SUMMARY OF FACTS AND RELIEF REQUESTED

Miriam Hittner Tondera ("Debtor") is in the fourth year of a confirmed Chapter 13 plan that provides no distribution to her unsecured creditors.

Debtor has been involved in years of litigation in Texas state courts because she refuses to stop threatening and harassing her brother, George Hittner ("Movant" or "Hittner") and other members of her family. Debtor has threatened and harassed her father, a United States District Judge. Debtor has been reported to Texas Adult Protective Services (by Movant and four other individuals) for financial and emotional abuse of her mother, a world-renowned pediatric ophthalmologist. This unfortunate family rift was set in motion in 2013 when the Debtor used trust funds (set aside for her children's education) for her own personal expenses. The Debtor and members of her family attempted to resolve their differences in 2016 when they entered into a settlement

agreement which specifically prohibited the Debtor from harassing and disparaging Movant.

Unfortunately, the harassment by the Debtor never fully subsided, and escalated to a point in 2020 that Movant was left with no option but to seek injunctive relief in a Texas State Court. The Texas State Court has already granted a Temporary Restraining Order and an Agreed Temporary Injunction against the Debtor. In response to the litigation, the Debtor has not only filed counterclaims against Movant, but has also amended her bankruptcy schedules and added Movant as an unsecured creditor. These actions by Debtor are obvious attempts to use the automatic stay as a both a sword and a shield.

Movant and his family simply want to be left alone, and therefore seek an order from this Court modifying the Automatic Stay to allow the Texas litigation to resume so they may be able to pursue a Permanent Injunction and other relief as may be appropriate.

## JURISDICTION AND VENUE

1. The Court has personal jurisdiction over the Debtor.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

3. The Movant waives any thirty-day requirement for a hearing as set forth in 11 U.S.C. § 362(e).

4. This contested matter arises out of and relates to the Debtor's chapter 13 case filed in the United States Bankruptcy Court for the Middle District of Georgia, Macon Division.

5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

**RELEVANT BACKGROUND FACTS**

6. Members of the Hittner family have been harassed and tormented by Debtor for the better part of the last seven (7) years. This is the latest unfortunate turn of a family rift that was set into motion in 2013 when Debtor converted funds that had been placed in her care for her son's education to her own personal use. Debtor has been unpersuaded to amend her behavior despite a temporary restraining order being signed against her, and has also failed to abide by two prior settlement/mediation agreements. Debtor has harassed (or threatened to harass) not only members of the Hittner family, but also their representatives, friends, colleagues (and the like), both directly, to others, via electronic mail, and on social media on a regular and consistent basis.

7. Movant served as Trustee for two trusts that had been established for Debtor's children, in which capacity Movant had served voluntarily and without remuneration from November 6, 2002 through June 7, 2016, when he resigned as Trustee.

8. In September 2013, Movant was informed by Debtor's ex-husband that Debtor had represented to him that the trusts for his children were depleted, and that he needed to pay "his portion" of school tuition for their son's private education. Upon Debtor's ex-husband's inquiry to Movant (then serving as Trustee), Debtor's ex-husband was informed that the trusts were, in fact, not depleted, and that Movant had already remitted a tuition payment to Debtor for their son's tuition. Upon further investigation, it was determined that Debtor had received the annual tuition check from Movant, paid half of her son's tuition from those funds, and converted the other half of the funds remitted to her to herself. Upon learning of these circumstances, Movant changed the policy of fund disbursements from the trusts such that payments would no longer flow through either

Debtor or her ex-husband, but rather, would be issued directly to the ultimate payee (i.e., school, camp, etc.). From the moment this policy change was made by Movant, Debtor has responded by relentlessly harassing, threatening, litigating, libeling and defaming Movant and members of his family.

9. In 2014, after nearly a year of relentless harassment and threats, Movant gave Debtor notice: if her behavior against him and his family did not cease, he would seek a restraining order against her. Debtor refused to cease her behavior, and on August 13, 2014 the 127th District Court of Harris County signed a Temporary Restraining Order against Debtor. *See attached Exhibit 1 – 2014 Temporary Restraining Order*.

10. Following assurances from Debtor that her harassment would stop, Movant nonsuited the 2014 proceedings. However, Debtor's behavior did not cease, and for the next two years, Movant continued to endure Debtor's harassing, threatening, libeling and defamatory behavior.

11. In January 2016, Debtor began requesting trust funds from Movant for the purchase of an automobile for her daughter. Movant informed Debtor that her daughter's Trust was being administered primarily for educational expenses, but that the trust would pay up to $9,000 towards the purchase of an automobile. There was another option of full payment, to be paid in $250 monthly installments which Debtor rejected. At every turn, Debtor threatened legal proceedings against Movant; and between January and June 2016, Debtor applied pressure for Movant to resign as Trustee. Movant finally agreed to resign as trustee, in exchange for a full release and post-resignation protections. On June 7, 2016, Movant, Debtor, the Grantor of the Trust, all alternate Trustees, and the subsequent acting-Trustee, all executed the Agreement. The 2016 Resignation

Agreements contained (amongst other provisions) a permanent renouncement of Debtor's right to serve as trustee.

12. The 2016 Resignation Agreements sought to end the harassing course of conduct on the part of Debtor through contractual agreements and to immediately and forever cease "derogatory or disparaging statements" or "unwanted, harassing, and/or threatening contact" towards Movant and other released parties under the Agreements. Despite this, Debtor has ignored the 2016 Resignation Agreements and continued her campaigns against Debtor and members of his family.

13. The 2016 Resignation Agreements contained a protection clause for Movant whereby Movant could request funds from the Trust(s) to cover his legal expenses if he were ever involuntarily drawn into a legal proceeding by Debtor related to Movant's time as Trustee. In September 2017, Movant received an inquiry from Debtor's ex-husband inquiring as to the contact information for the acting-Trustee. It was upon this inquiry that Movant learned that Debtor's ex-husband was being taken back to court by Debtor because her ex-husband adjusted child support payments when their oldest child left for college.

14. Upon learning that Movant had provided the contact information of the acting-Trustee to Debtor's ex-husband, Debtor, acting in a Pro Se capacity, issued a third-party subpoena/Request for Production of Documents pursuant to Official Code of Georgia Annotated ("OGCA") §9-11-34(c) in the Superior Court of Dougherty County, Georgia, to Movant, seeking documents related to Movant's nearly fourteen-year term as Trustee of the aforementioned Trusts.  Movant's resignation as Trustee had been effective for more than a year, and he no longer had any interactions or management with the Trusts.

Moreover, the new acting-Trustee was in possession, custody or control of all the documents and records sought by Debtor. Despite Debtor's actual knowledge of these facts, Debtor issued a subpoena to Movant seeking every single document related to his time as Trustee; in addition to correspondence with Debtor's ex-husband.

15. Upon receiving Debtor's third-party subpoena/Request for Production of Documents, Movant responded and stated that all of the documents Debtor requested had been handed over to the acting-Trustee and that Debtor should obtain them from her. Movant further warned that if Debtor did not withdraw her request that he would be forced to request legal funds from the Trust to respond to her request pursuant to the 2016 Resignation Agreement. Debtor refused to withdraw her request. Specifically, Debtor refused to seek the requested materials from the acting-Trustee who had been provided all of Movant's original files during his service as Trustee. Movant forwarded Debtor's rejection to withdraw her request to the acting-Trustee, and requested she disburse $10,000.00 to Debtor's attorney. The acting-Trustee, acting within her discretion, remitted the funds to Movant's attorney. The funds disbursed by the acting-Trustee were exclusively for the expense of responding to Debtor's actions taken in violation of the Resignation Agreement, along with the expense of necessary litigation to enforce the provisions of the Resignation Agreement.

16. Thereafter, Counsel for Movant, opened a dialogue with Debtor in an effort to resolve the dispute in a timely manner and without further depletion of the Trust funds. After many exchanges between Movant's counsel and Debtor, Debtor voluntarily dismissed her Georgia action against her ex-husband with prejudice. However, Debtor refused to agree to end the harassing conduct and communications against Movant.

Debtor continued making threats of litigation against Movant and Movant's counsel, requesting the "full $10,000" be returned to the Trust. When informed that was not possible because a portion of those funds had already been used to defend Movant from Debtor's request for production and in preparation for litigation to enforce the 2016 Resignation Agreement's terms, the threats from Debtor increased along with the legal expenses.

17. Notably, despite repeated assurances that $10,000 (if not more) would be made available and applied toward Debtor's daughter's college tuition by Movant and members of his family, Debtor continued. Put simply, neither Movant nor any other member of his family were willing to deposit funds into the Trust, especially since Trust funds that had been appropriately managed for 14 years had been recklessly depleted in one year; the same year that Debtor filed for bankruptcy protection. The fact Debtor had purported to have established herself as Trustee, only exacerbated Movant's inclination against depositing funds into the control of someone who has proven to be fiscally irresponsible; especially considering Debtor had previously converted trust funds from her son's trust that had been designated for his education to her personal use.

18. In the second lawsuit (and counter-lawsuit) between Debtor and Movant, Debtor filed an action against Movant in Texas to attempt to recoup the funds that were remitted to Movant by the former Trustee of Debtor's daughter's trust. Debtor's husband represented her in this action until he was forced to withdraw by his law firm because they had not sanctioned his participation in the lawsuit on behalf of Debtor. The parties ultimately mediated and resolved that lawsuit. Although other members of the Hittner

family were not signatories of the 2018 Mediation Agreement between Debtor and Movant, their father was a third-party beneficiary of that 2018 Mediation Agreement.

19. Specifically, Debtor agreed to forebear any communication (other than via the mediator who helped resolved the litigation) with her father, David Hittner, for a period of two years. The 2018 Mediation Agreement contained a one-year extension "option period;" which David Hittner triggered on June 30, 2020. Debtor has repeatedly breached the terms of the 2018 Mediation Agreement as it relates to Movant and his father. Indeed, Debtor has systematically failed to abide by any agreement she has entered into with Plaintiff.

20. In November of 2019, Debtor learned of an Irrevocable Trust (hereinafter, "Mintz-Hittner Trust") that had been established by Helen Mintz-Hittner (mother of Debtor and Movant). Movant and his other sister, Susan Hittner, were designated as co-Trustees of the Mintz-Hittner Trust. Subsequently, on December 23, 2019, without notice to, or permission from Dr. Mintz-Hittner, Debtor's husband transmitted a letter on his employer's letterhead to the Shenandoah Life Insurance Company. In the letter, Debtor's husband states: "Please be advised that this firm represents the Primary Beneficiary Miriam Hittner Minix and Contingent Beneficiary Joe Perkins Tondera in connection with the above referenced life insurance policy…" Debtor's husband's letter triggered internal alerts within the life insurance company, and its representative reached out to Dr. Mintz-Hittner (the owner of the policy) and Movant to express concern regarding this unusual communication.

21. Debtor's husband utilized law firm letterhead without permission from either his law firm or Dr. Mintz-Hittner's representatives in an attempt to improperly coerce the life

insurance company for Debtor. Simultaneously, Debtor and Debtor's husband's conduct reflects an effort to interfere with Dr. Mintz-Hittner's estate plan without her consent or knowledge.

### TEXAS STATE COURT PROCEEDINGS

22. On August 14, 2020, as a result of the Debtor's refusal to stop the harassment, Movant was left with no choice but to file a second lawsuit against the Debtor in State Court in Houston, Texas (the "Texas Litigation"). [1]

23. In response to the Texas Lawsuit, the Debtor amended her Schedule F and added Hittner as an unsecured creditor, with an unsubstantiated claim in the amount of $10,000.00.

### BANKRUPTCY FILING

24. Although Movant was added to the Debtor's bankruptcy schedules in November 2020, the Debtor has been in a pending bankruptcy since September 20, 2016.

25. The Debtor's Chapter 13 Plan was confirmed on January 4, 2017, and the Debtor has less than one year to complete her Chapter 13 plan.

26. The Debtor's plan does not provide for a distribution to her unsecured creditors.

### RELIEF REQUESTED

27. Movant prays for the entry of an order modifying the automatic stay to allow him to continue with the Texas Litigation so that they can obtain a permanent injunction against the Debtor to finally put an end to the harassment.

28. Although Movant does seek reimbursement of attorney's fees, costs and interest in the Texas Litigation, he will contentedly agree to an order that prohibits any collection

---

[1] "The Texas Litigation is currently under a temporary seal order. Out of an abundance of caution, the majority of supporting documents related to the proceeding have been excluded from this public filing, but can be produced to the Court in camera or submitted under seal."

of those fees until after the Debtor's bankruptcy case is either dismissed or Ms. Tondera receives her discharge.

## LEGAL STANDARD

29. Cause exists to grant the Movant's motion pursuant to 11 U.S.C. § 362(d)(1).

30. Courts look at numerous factors to determine if cause exists to grant a motion for stay relief including: 1) prejudice to the bankruptcy estate and the Debtor; 2) the hardship on the Movant denying stay relief versus the hardship on the Debtor granting stay relief; and 3) the Movant's probability of success on the merits. *In re Coachworks Holdings, Inc.*, 418 B.R. 490, 492 (Bankr. M.D. Ga. 2009).

31. First, there is little prejudice to the Debtor or the estate if the stay is modified. The Debtor is in her final year of a confirmed Chapter 13 plan that provides no distribution to the unsecured creditors. Furthermore, Movant is not seeking turnover of any assets, is seeking primarily equitable relief against the Debtor, and the Texas Litigation will not interfere with the Debtor's Chapter 13 plan.

32. The second factor also weighs in Movant's favor as the hardship on him is significant if the stay is not modified, as this prevents him from seeking injunctive relief from the Texas Court which will result in months of harassment from the Debtor. The hardship on the Debtor will be very minimal if the automatic stay is modified as the Debtor can make any telephonic appearances in the Texas Litigation.

33. The final element requires the Court to determine Movant's probability of success on the merits. The Texas State Court has already granted a Temporary Restraining Order and an Agreed Temporary Injunction against the Debtor and it seems probable that a permanent injunction will also be granted. Furthermore, as discussed above, the Movant

believes that he will also succeed on the merits of the breach of contract claim for the Debtor's blatant violations of the 2016 Resignation Agreement and the 2018 Mediation Agreement.

34.     Finally, the Movant also requests a waiver of the fourteen-day stay set forth in Fed.R.Bankr.P. 4001(a)(3).

This 17th day of November, 2020.

/s/ Robert M. Matson
_____

Akin, Webster & Matson, P.C.          Robert M. Matson
P.O. Box 1773                         Attorney for Movant
Macon, GA  31202                      State Bar No. 477102
(478) 742-1889
rmatson@akin-webster.com

8/13/2014 12:24:31 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 2143410
By: CARLTON, SHARON J

2014-46426 / Court: 127
Cause No.

p.3

| | § | IN THE DISTRICT COURT OF |
|---|---|---|
| G.J.H. *as trustee* of the | § | |
| JOE PERKINS TONDERA TRUST and | § | |
| SOPHIE ANN TONDERA TRUST | § | |
| *Plaintiff,* | § | |
| | § | HARRIS COUNTY, TEXAS |
| v. | § | |
| | § | |
| MIRIAM TONDERA, | § | |
| *Defendant.* | § | |
| | § | _____ JUDICIAL DISTRICT |

Ex Parte

## TEMPORARY RESTRAINING ORDER &
## ORDER SETTING HEARING FOR PRELIMINARY INJUNCTION

After considering Plaintiff, G.J.H. *as trustee* of the Joe Perkins Tondera Trust and Sophie Ann Tondera Trust's application for temporary restraining order, the pleadings, the affidavits, and arguments of counsel, the Court finds there is evidence that harm is imminent to Plaintiff, and if the Court does not issue the temporary restraining order, Plaintiff will be irreparably injured because the Defendant ~~has published information to third parties which is defamatory and false, jeopardizing the Plaintiff's personal and professional reputation and~~ has invaded upon Plaintiff's privacy by making repeated harassing and threatening communications to the Plaintiff.

Plaintiff asks this Court to prohibit Defendant from threatening the Plaintiff and his family, from making harassing telephone calls to the Plaintiff or his family, ~~from sending defamatory communications about the Plaintiff and his family to third parties~~, ~~and~~ from sending or causing to be sent offensive and provocative communications to him and his family and friends. If Defendant is not prohibited from threatening the Plaintiff and his family, making harassing telephone calls to the Plaintiff, *and* sending harassing e-

mails ~~and sending defamatory communications~~ about the Plaintiff ~~and his family to third parties~~, harm *would be* imminent. ~~Specifically, Plaintiff will suffer irreparable injury to his personal and professional reputation~~. It is probable that Plaintiff will recover from the Defendant after a trial on the merits, because the statements ~~published by the Defendant are defamatory and false and~~ invade Plaintiff's right to privacy at home and at his place of employment.

Unless the Court enters an order protecting Plaintiff from repeated harassing electronic communications ~~and from the further release of these defamatory communications~~, now or in the future, the harm that will result will be irreparable. ~~Furthermore, the release of the defamatory statements will result in Plaintiff having to spend large amounts of money to disprove the lies made public by Defendant—a fact Defendant has acknowledged and reveled in via electronic mailings.~~

Plaintiff is likely to succeed on the merits of its lawsuit, ~~because Defendant is strictly liable for defamation (libel per se)~~. No adequate remedy at law exists in this matter. If Defendant is not restrained in the afore-mentioned manner, the damages are incalculable.

Therefore, by this order, the Court does the following:

a. Restrains Defendant from threatening the Plaintiff and his family;

b. Restrains Defendant from making harassing communications to the Plaintiff and his family;

c. Restrains the Defendant from making harassing and threatening communications Plaintiff at his work and home; and

d. ~~Restrains Defendant from sending defamatory communications to third parties about the Plaintiff and his family.~~

e. Orders the clerk to issue notice to Defendant, Miriam Tondera that the hearing on Plaintiff's application for temporary injunction is set for _Aug. 28_, 2014, at _11:00_ a.m./~~p.m.~~ The purpose of the hearing shall be to determine whether this temporary restraining order should be made a temporary injunction pending a full trial on the merits.

This order expires on _Aug. 28_, 2014 at _8:44_ a.m./p.m.

This order shall not be effective unless and until Plaintiff executes and files with the clerk a bond in conformity with the law in the amount of $ _2500.00_

_____
PRESIDING JUDGE

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 16-11141 AEC |
| | § | |
| MIRIAM HITTNER TONDERA | § | |
| | § | |
| DEBTOR | § | CHAPTER 13 |

## **CERTIFICATE OF SERVICE**

This certifies that I have this day served a copy of the Motion for Relief from Automatic Stay and Waiver of Thirty Day Hearing Requirement and Notice of Hearing on Motion for Contempt and Notice of Hearing on Motion for Relief from Automatic Stay and Waiver of Thirty Day Hearing Requirement on **F. Anthony Blakey** and **Jonathan W. DeLoach, Trustee** via CM/ECF electronic notice and on **Miriam Hittner Tondera,** 6000 River Road, Apt. 1305, Columbus, GA  31904 via first class mail by depositing the documents in a properly addressed envelope with adequate postage attached.

This 17th day of November, 2020.

/S/ Robert M. Matson

_____

Akin, Webster & Matson, P.C.  
P.O. Box 1773  
Macon, GA  31202  
(478) 742-1889  
rmatson@akin-webster.com  

Robert M. Matson  
Attorney for Movant  
State Bar No.  477102